Rafael **FERNANDEZ–ROQUE**, et al., Petitioners,

v.

William French **SMITH**, et al., Respondents.

Moises **GARCIA–MIR**, et al., Plaintiffs,

v.

William French **SMITH**, et al., Defendants.

Orlando **CHAO–ESTRADA**, Petitioner,

v.

William French **SMITH**, et al., Respondents.

Civ. A. Nos. C81–1084A, C81–938A and C81–1350A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 31, 1984.

Deborah Ebel, Dale Schwartz, Myron Kramer, Kenneth Hindman, David Webster, Atlanta, Ga., for petitioners.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Lauri S. Filppu, Madelyn E. Johnson, Dept. of Justice, Civil Div., Washington, D.C., Larry D. Thompson, U.S. Atty., Sharon D. Stokes, Atlanta, Ga., for respondents.

## ORDER

SHOOB, District Judge.

This matter is before the Court on the government's motion for a stay of this Court's October 15, 1984 order, 599 F.Supp. 1103, pending disposition of an appeal of that order before the Eleventh Circuit

Court of Appeals. That order remanded plaintiffs' class-wide asylum claims to the Board of Immigration Appeals for a hearing on the merits and set aside final orders of exclusion for all class members pending the outcome of that hearing.

 In order to prevail on its motion, the government must demonstrate that it is likely to prevail on the merits of the appeal, that it will suffer irreparable injury if the stay is not granted, that a stay will not substantially harm the other parties to the litigation, and that the stay is in the public interest. The motion will be denied for the following reasons.

1. The October 15, 1984 order is not appealable under 28 U.S.C. § 1291 as a final order, nor does it fall within any exceptions to the final judgment rule. Neither is the order appealable as an order granting an injunction under 28 U.S.C. § 1292(a). The language of the order setting aside final orders of exclusion is merely surplussage. It granted no additional relief and was added only for the purposes of clarity.

2. The government has failed to demonstrate it is likely to prevail on the merits of the appeal. In fact, the reverse is probably true, as is fully set out in plaintiffs' brief.

3. The grant of a stay is likely to cause serious and irreparable harm to plaintiffs, in that many, if not all, will be returned to Cuba prior to an adjudication of their asylum claims. A stay will moot the case for each class member deported during the pendency of the appeal.

This Court has not addressed the government's contention that it will suffer irreparable injury absent a stay [1] and that a stay is in the public interest,[2] since it is obviously also in the public interest that no one is returned to Cuba who is entitled under our laws to asylum or an adjudication of other pending claims.[3]

Defendant's motion for a stay is DENIED.

1. The government's position is that, given the present opportunity, since many of the detainees will never qualify for asylum, all detainees in the class should be returned. This Court concludes that it is far better to keep those detainees in prison until the rights of all class members are adjudicated than to return to Cuba possibly hundreds of class members who may be entitled to refuse in this country.

2. It is not the function of this Court to assess whether the government made a fair trade in agreeing to accept 3000 political prisoners and their families from Cuba in 1985 and up to 20,000 Cuban immigrants each year in exchange for the return of 2746 Cuban detainees here; but when the government argues that the public interest should be considered by the Court, the Court cannot help but wonder, in the words of the old refrain, "What kind of deal is this?" The public interest can best be served in this case by having the Board of Immigration Appeals promptly hear the asylum claims on the merits. In the interim, the government might consider returning to Cuba as a part of the 100 a month quota acceptable to Cuba those detainees who are not a part of the class and who obviously are not entitled to refuge.

3. The government continues, through the news media and in its argument, to categorize all the Cuban detainees as dangerous criminals. This was the same position taken by the government before this Court some four years ago. Since then approximately 2700 detainees have been released, either because they had committed no crimes here or in Cuba, or because they were found by the government not to be dangerous. It should be obvious by now to anyone of good judgment and with a basic sense of fairness that many of the present detainees are indeed dangerous criminals and that many are not.